Per Curiam.
 

 This is a bill brought to rescind a contract entered into between these parties for the purchase of a tract of land, upon the ground of misrepresentation. On the 27th of November, 1812, the contract was closed by the defendant’s giving his bond, conditioned to make a conveyance to the plaintiff on or before the 27th of November, 1818 ; and by the complainant’s giving his notes for the purchase money, payable at one and two years. It appeared in evidence that the land contracted for was a certain tract of 100 acres, lying in the county of Scott and State of Kentucky, on which one Vorhies lived from the year 1800 to the year
 
 1811;
 
 and that it was represented by the defendant to the complainant, who never had seen it, and was altogether ignorant of it, as being on M‘Con-nel’s Creek, within six miles of Georgetown, having 40 acres of
 
 *367
 
 cleared land on it, under good fence, all but the meadow part; “ blue grass lots, an apple orchard and other
 
 *
 
 fruit-trees, with a never-failing spring; a handsome seat for a distillery, a good hewed log dwelling-house, a double house with a passage in it, two stone chimneys, floors above and below, but not laid, a shingle roof; having also a good double barn, with other houses; and well timbered with oak, and good second-rate land, and rented for eighty dollars’ worth of corn for the year 1812.” Whereas, upon the testimony, it appeared to be third-rate land, lying the greater part of it on Lycons, a small part of it on the waters of M‘Connel’s Creek, and occupying the ridge between these two water-courses; having no orchard but a few peach-trees, fences indifferent, dwelling-houses indifferent, with cabin roofs; the barn single, with a stable to the end, a small corn-crib, and the body of another house; one of the chimneys about half finished ; the water indifferent, but lasting, not calculated for a distillery; the place nine miles from Georgetown ; rented for the year 1818 at $10 by defendant’s agent, to the occupier of it for the year 1812, who contended it was not worth more that year ; it was accordingly so settled between them, and the tenant’s note taken in $20, being the rent of both years, with a reservation not to be conclusive on the defendant for the year 1812, if he should disapprove of the adjustment. It further appeared that it had been formerly well timbered with oak, but had been destroyed by Vorhies before he sold it, and that the present value of it is $1.50 per acre.
 

 On this case it is contended by the complainant’s counsel, that the contract should be rescinded ; that the defendant should be particularly enjoined from proceeding at law upon the judgment he hath obtained on one of the notes for the purchase money, and be compelled to deliver up the other to be canceled, and to refund whatever sums he may have received from the complainant under the contract.
 

 It further appeared in evidence, that the land for six * miles from Georgetown in the direction of M'Connel’s Creek, was all land of the first quality, and that the complainant was acquainted with the circumstance; that the land a mile or two further in the same direction became worse, and in the neighborhood of the tract in question, it was of the third quality. It further appeared that the defendant was on the land in the month
 
 *368
 
 of May, 1811, in which month his deed from Vorhies is dated, from which it is inferred he was acquainted with the land.
 

 One book (1 Pow. Con. 147, 148) lays it down, that in agreements made for the purchase of estates, in which the estates are afterwards found in circumstances to have been erroneously represented to the purchaser, such agreement may be void, as in those cases when the misrepresentation applies to that at which the person making the contract particularly aimed, his assent being supposed to be given or founded on the existence of it. Any deviation in these cases is essential. To apply this doctrine to the present case, the quality of the land here seems to be the circumstance, and it is of sufficient importance to incline or determine the will of the contracting party one way or the other ; unless, indeed, in particular situations, and for particular purposes, it is always in the country a controlling circumstance in the acquisition of lands, and forms the principal object aimed at by the purchaser. The land being in the present case represented as good second-rate, and lying within six miles of Georgetown, and on M'Gonnel’s Creek, where the complainant knew there was none but good land, establishes this beyond a question as to the present purchaser. The price too is an additional evidence, and $6 per acre of itself proves, that the quality was a principal circumstance; for if in the present case we affix not the price to the quality as the principal object for its quantum, there is no other object in the description of the premises of sufficient importance to * attach it to. Take away this circumstance from the description, to wit, second-rate, and substitute third-rate in lieu thereof, can the complainant’s assent to the contract be presumed ? Measuring his conduct by the ordinary scale of human conduct in this country, it cannot. This principal circumstance, the object of the contract, being erroneously stated, must make the contract void according to the book. Particulars of less consideration misrepresented, would not avoid, because it is presumed that the principal object being obtained, the bargain would not have failed on their account, if the true state of the land had been known; therefore the deficiency in these lies in compensation. Such might, in the present case, be the deficiency of the dwelling house, barn, &c., &c. This view of the case is under the supposition there was simple misrepresentation, by error without intention in the
 
 vendor;
 
 but when we find him on the prem
 
 *369
 
 ises in May, 1811, at the date of his deed, when we may suppose he purchased, and of course examined the premises, under that view, it cannot be permitted to be said that it was a simple error and misrepresentation without knowing to the contrary; such an induction' we are not authorized to draw from the premises. The transaction pointing further, allows us not to view the vendor as perfectly free from the imputation of fraudulent misrepresentation and concealment, which reduces the question- within narrow bounds, and irresistibly draws to the conclusion, that the complainant is entitled to be relieved from a contract thus obtained. See New. 291, 352, 353.
 

 Decree that the defendant be perpetually enjoined from proceeding at law upon the judgment obtained by him on the note given under .this contract, and that the other note in the sum of $250, payable the 25th December, 1811, be delivered up by the defendant to the complainant to be canceled ; and that the defendant refund to the complainant the different sums * of $30 and of $77.75, but without interest, being payments heretofore made by the complainant under the contract in the bill stated; and that the complainant deliver defendant’s bond in bill mentioned, dated the 27th November, 1812, for making a title to the defendant, to be canceled, and that each party pay his own cost in this court.
 

 See, as to
 
 concealment, White
 
 v.
 
 Cox,
 
 3 Hay. 79, note
 
 sub. fin.
 
 As to
 
 compensation, Grissom
 
 v.
 
 Sorrel,
 
 8 Hum. 372. See King’s Digest, 2232, 2325.